IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ZABE JENKINS, | Case No. 1:21-cv-00620-PAB |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| KURT DAHLBY, et al., | |
| Defendants. | MEMORANDUM OPINION & ORDER |

This case is before the Court on Defendants Kurt Dahlby, Lisa Booth, and Billy Morgan's Motion for Summary Judgment filed on May 30, 2023. (Doc. No. 30.) Plaintiff Zabe Jenkins ("Jenkins") did not file a response.

For the following reasons, the Court GRANTS Defendants' Motion for Summary Judgment.

I. **Background**

When he filed his Complaint, Jenkins was an inmate at the Mansfield Correctional Institution.[1] (Doc. No. 1 at p. 2.) Defendants Kurt Dahlby ("Dahlby") and Lisa Booth ("Booth") are inspectors and Defendant Billy Morgan ("Morgan") is a correctional officer at the prison.

On September 19, 2019, Jenkins was eating dinner in the prison's dining room. (Doc. No. 1 at p. 3.) After finishing his meal, he got up to return his tray and saw Morgan ahead of him. (*Id.*) Morgan walked out of the dining room and into the sally port. (Doc. No. 30-2 at p. 1.) Two other correctional officers, Beal and Copus, joined Morgan in the sally port. (*Id.*) Copus looked at Morgan,

---

[1] Defendants write in their Motion that Jenkins is now housed at the Richland Correctional Institution. (Doc. No. 30 at p. 2.)

smiled, then left the sally port. (*Id.*) Morgan reached out and sprayed Beal's leg with OC spray. Copus laughed. (*Id.*)

The OC spray drifted into the dining room. (*Id.*) The inmates there—including Jenkins—began to cough. (*Id.*)

On September 20, 2019, Jenkins filed a grievance about the incident. (Doc. No. 1-1.) He complained that the OC spray caused him to "tear and cough profusely." (*Id.*)

On September 23, 2019, Jenkins had a follow-up chronic care appointment with a certified nurse practitioner at the prison. (Doc. No. 30-3 at ¶¶ 7-8.) The nurse noted that Jenkins was "alert and oriented and in no acute distress" during the appointment. (Doc. No. 30-4 at p. 2.) She did not observe Jenkins suffering from any symptoms of exposure to OC spray. (Doc. No. 30-3 at ¶ 14.)

Also on September 23, 2019, the prison assigned Captain Domenic Wolpe ("Wolpe") to investigate the incident. (Doc. No. 30-1 at ¶ 3.) The following day, Dahlby advised Jenkins that the incident was being investigated. (Doc. No. 1-1.) A few hours later, Jenkins wrote back that he did not want an investigation, he wanted immediate action. (*Id.*)

On September 27, 2019, Booth responded and assured Jenkins that "[i]mmediate remedies and actions were taken and [the incident] was assigned to be further investigated." (*Id.*) She advised Jenkins that his grievance was granted insofar as the prison was investigating the incident. (*Id.*)

On October 3, 2019, Wolpe submitted his investigation report. (Doc. No. 30-2 at p. 1.) Wolpe reviewed video footage and interviewed the officers involved. (*Id.*) He concluded that Morgan sprayed OC spray on Beal's leg, which caused the inmates in the dining room to cough. (*Id.*) Wolpe characterized the incident as "[h]orse-playing with OC while at work." (*Id.*)

On October 8, 2019, Jenkins filed an appeal to his grievance, writing that he was "experiencing more than unusual discharge from [his] tear ducts, and sty[e]s have been popping up around the lids of [his] eyes." (*Id*.) On October 16, 2019, the Office of the Chief Inspector denied Jenkins's appeal. (*Id*.) Over a year later, Jenkins filed a second grievance about the incident where he alleged that Dahlby and Booth denied him access to medical care.[2] (*See* Doc. No. 30 at p. 11.)

On March 18, 2021, Jenkins filed a pro se Complaint in this Court. (Doc. No. 1.) On June 20, 2021, Attorney Patricia Horner entered an appearance on his behalf. (Doc. No. 3.)

On November 15, 2021, Defendants filed an Answer (Doc. No. 8) and a Motion to Dismiss for Failure to State a Claim. (Doc. No. 9.) On June 15, 2022, the Court granted in part and denied in part Defendants' Motion. (Doc. No. 14.) The Court construed Jenkins's pro se Complaint as alleging two claims under 42 U.S.C. § 1983 and the Eighth Amendment. (*Id*. at pp. 8-9.) One claim is for excessive force against Morgan, and the other claim is for deliberate indifference against Dahlby and Booth. (*Id*.) The Court also concluded that Jenkins sufficiently plead those claims. (*Id*. at pp. 11-12.)

On July 26, 2022, the Court held a Case Management Conference and set case deadlines. (Doc. Nos. 23, 24.) On May 30, 2023, Defendants filed the present Motion for Summary Judgment. (Doc. No. 30.) Jenkins did not file an opposition.

## II. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A

---

[2] Defendants proffer in their Motion that Jenkins filed this second grievance 485 days after the incident, which the Court calculates to be January 16, 2021. (Doc. No. 30 at p. 11.) Defendants, however, did not attach this second grievance to their Motion.

3

dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004)). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487 (citing *Hedrick*, 355 F.3d at 451).

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "[T]he moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 256). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex*, 477 U.S. at 325).

Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial."

*Ask Chems.*, 593 F. App'x at 508-09 (citing *Anderson*, 477 U.S. at 256). "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

When there is no opposition to a summary judgment motion, the Court "may rely 'on the facts advanced by the movant,'" *Malone v. Shelby Cty.*, 2021 U.S. App. LEXIS 36622 at *13 (6th Cir. Dec. 10, 2021) (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992)), but it must still "review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014)).

**III.    Analysis**

Defendants move for summary judgment for four reasons: (1) there is no evidence to satisfy the objective and subjective components of Jenkins's excessive force claim; (2) there is also no evidence to satisfy the objective and subjective components of Jenkins's deliberate indifference claim; (3) Jenkins failed to exhaust all available administrative remedies for his deliberate indifference claim; and (4) Defendants are entitled to qualified immunity. (Doc. No. 30 at pp. 6, 8, 10, 14-15.) The Court will address each of Defendants' arguments in turn.

**A.    Jenkins's Excessive Force Claim Against Morgan**

The Eighth Amendment proscribes "the unnecessary and wanton infliction of pain" against prisoners. *Taylor v. Davidson Cty. Sheriff's Dep't*, 832 F. App'x 956, 959 (6th Cir. 2020) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). An Eighth Amendment claim for excessive force has both a subjective and objective component. *Id*. The objective component requires that Jenkins "show

5

that the amount of force used was 'sufficiently serious' to warrant protection under the Eighth Amendment." *Id*. (quoting *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014)). The subjective component requires Jenkins to show that Morgan "used force maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline." *Id*. (citation omitted).

Morgan argues that there is no evidence to support the objective and subjective components of Jenkins's claim. (Doc. No. 30 at p. 6.) First, Morgan contends that Jenkins's OC spray injuries were not "sufficiently serious" because the injuries were no longer present at his follow-up medical appointment four days after his exposure. (*Id*. at p. 7.) Second, Morgan argues that because he was "playing a practical joke" on another officer he did not have the required malicious or sadistic intent to harm Jenkins. (*Id*. at pp. 7-8.) For the following reasons, the Court concludes that there is no genuine dispute of material fact that Morgan did not use excessive force on Jenkins.

### a. Excessive Force: The Objective Component

"[T]he extent of a prisoner's injury may help determine the amount of force used by the prison official," however, "it is not dispositive of whether an Eighth Amendment violation has occurred. *Cordell*, 759 F.3d at 580-81 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). But "[n]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Hernandez v. Simmons*, 2020 U.S. App. LEXIS 29233 at *7 (6th Cir. Sep. 14, 2020) (quoting *Hudson*, 503 U.S. at 9). Even where a prisoner does not actively resist, he "must show something more than *de minimis* force." *Id*. (citing *Leary v. Livingston Cty.*, 528 F.3d 438, 443 (6th Cir. 2008)). The use of OC spray is not per se malicious or sadistic. *Id*. (citing *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002)). Rather,

6

the question is whether the force used is "repugnant to the conscience of mankind." *Id*. (quoting *Hudson*, 503 U.S. at 9-10).

In *Hernandez*, officers used OC spray and "pepper balls" on a prisoner who refused to leave his cell to take a shower. 2020 U.S. App. LEXIS 29233 at *3. The prisoner filed suit alleging "that the chemical agents burned his eyes and skin and 'melted' his contact lenses to his eyes, causing his eyes to bleed when he removed his contact lenses." *Id*. at *1-2. The district court concluded that there was no genuine dispute of material fact that the prisoner suffered only *de minimis* injuries. *Id*. at *4. The Sixth Circuit affirmed in part because the prisoner "did not submit any medical records indicating that he was treated for injuries resulting from the . . . incident that would substantiate his claims of injury." *Id*. at *8.

Here, Jenkins alleged in his Complaint that he experienced "more than usual discharge from [his] tear ducts, and "sty[e]s . . . popping up around the lids of [his] eyes." (Doc. No. 1 at p. 4.) However, Jenkins's "verified" Complaint does not distinguish between allegations based on firsthand knowledge and those based on information and belief. His Complaint, therefore, is not admissible for summary judgment purposes. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to . . . oppose a [summary judgment] motion must be made on personal knowledge."); *see also White v. Erdos*, 2022 U.S. App. LEXIS 2492 at *5 (6th Cir. Jan. 26, 2022) (holding that a verified complaint that failed to distinguish between firsthand knowledge and information and belief was not admissible for summary judgment purposes); *Taylor v. Kimmel*, 2020 U.S. App. LEXIS 20443 at *5 (6th Cir. June 30, 2020) (same). Moreover, his allegations are conclusory without any evidence to support them. *See Reedy v. West*, 988 F.3d 907, 914 (6th Cir. 2021) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)) ("The purpose of summary judgment is to determine whether a material

7

fact dispute exists for the jury to resolve, 'not to replace conclusory allegations of the complaint or answer with conclusory allegations [in] an affidavit,' verified complaint, or deposition.").

The only admissible evidence before the Court is that at Jenkins's follow-up appointment four days after his exposure, the nurse noted no unusual discharge, styes, or any other symptoms of OC exposure. (Doc. No. 30-3 at ¶¶ 12-15.) Like in *Hernandez*, Jenkins has not submitted any medical records to substantiate his claimed injuries. When the Court views the available evidence in the light most favorable to Jenkins, it amounts to the OC spray "causing some inmates[, including Jenkins,] to cough." (Doc. No. 30-1 at p. 2.) Therefore, there is no genuine dispute of material fact that Morgan did not use sufficiently serious force to make out the objective component of an excessive force claim.

### b. Excessive Force: The Subjective Component

Since Jenkins cannot make out the objective component, this Court "need not reach the subjective component." *Hernandez*, 2020 U.S. App. LEXIS 29233 at *9. Even so, the Court will briefly address it. The subjective component requires "a heightened showing that the prison official acted 'maliciously and sadistically for the very purpose of causing harm.'" *Rafferty v. Trumbull Cty.*, 915 F.3d 1087, 1094 (6th Cir. 2019) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Wolpe, who investigated the OC spray incident, concluded that

> Morgan, Beal and Copus were involved in a horseplay incident where Morgan sprayed OC on Beal's leg in the sally-port adjacent to the chow hall. . . . After the horseplay incident it appeared as though some OC spray drifted from the sally-port into the chow hall causing some inmates to cough.

Morgan's actions were unprofessional, unwise, and likely negligent. But even negligence falls far short of acting "maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6; *see also Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (holding that the Eighth Amendment requires more than negligence).

8

As such, there is no genuine issue of material fact that Morgan did not act with the malicious and sadistic intent to cause Jenkins harm.

### B. Jenkins's Deliberate Indifference Claim Against Dahlby and Booth

An Eighth Amendment claim for deliberate indifference also has both a subjective and objective component. The Sixth Circuit has explained:

> The "objective component" addresses the conditions leading to the alleged violation: it "requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the Constitution." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 567 (6th Cir. 2020) (citation and brackets omitted). The "subjective" component, meanwhile, addresses the officials' state of mind and requires a plaintiff to show that a defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

*Helphenstine v. Lewis Cty.*, 60 F.4th 305, 315 (6th Cir. 2023).

Dahlby and Booth argue that they were not deliberately indifferent towards Jenkins's medical needs for two reasons: (1) Jenkins never requested (and therefore was never denied) access to the infirmary; and (2) they could not have subjectively perceived Jenkins's need for medical treatment. (Doc. No. 30 at p. 9.)

For the following reasons, the Court concludes that there is no genuine issue of material fact that Dahlby and Booth were not deliberately indifferent to Jenkins's medical needs.

#### a. Deliberate Indifference: The Objective Component

Like Jenkins's excessive force claim, the objective component of his deliberate indifference claim requires "proof of a 'sufficiently serious' medical need." *Dodson v. Wilkinson*, 304 F. App'x 434, 439 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004)). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as

9

mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Dodson*, 304 F. App'x at 439 (quoting *Blackmore*, 390 F.3d at 897). If the prisoner's deliberate indifference claim is based on "minor maladies or non-obvious complaints of a serious need for medical care," the prisoner must submit medical evidence to satisfy the objective component. *Colson v. City of Alcoa*, 2021 U.S. App. LEXIS 26532 at *13 (6th Cir. Sep. 1, 2021) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 312 (6th Cir. 2005)).

There is no evidence that a physician diagnosed Jenkins's injuries as needing treatment. In fact, the nurse that saw him four days after the incident specifically observed that he was not suffering from exposure to OC spray. (Doc. No. 30-3 at ¶ 14.)

That leaves the question of whether a lay person would have easily recognized Jenkins as needing a doctor's attention. Jenkins's allegation is that Dahlby and Booth failed to provide him medical treatment after he advised them of his injuries in his October 8, 2019, grievance. (*See* Doc. No. 14 at p. 9.)

In his grievance, Jenkins wrote, in relevant part:

> Since the incident [I] have been experiencing a more than usual discharge from my tear ducts, and "sty[e]s" have been popping up around the lids of my eyes. I'm not sure of what was in the "pepper spray"? I do not speak to staff about their co-workers, but [I] am concerned with how the grievance process is handled because [I]'ve had retaliation issues from other grievance offices "leaking" my complaints.

(Doc. No. 1-1.) Jenkins's grievance did not alert Dahlby and Booth that he was suffering from more than the normal effects of OC spray. Nor did he complain that he was not receiving medical care. Jenkins's concern was that Dahlby and Booth were not properly handling his grievance. No reasonable jury could find that Jenkins's grievance showed an obvious need for medical attention.

10

Lastly, even if the Court accepts that Jenkins's grievance was a "non-obvious complaint of a serious need for medical care," Jenkins must produce medical record evidence to support this allegation. *Colson*, 2021 U.S. App. LEXIS 26532 at *13. Jenkins did not do so. The only medical evidence before the Court is that as of September 23, 2019, Jenkins was not suffering from OC spray exposure. (Doc. No. 30-3 at ¶ 14.) As such, there is no genuine issue of material fact that Jenkins did not have a sufficiently serious medical need to satisfy the objective component. *See Winer v. Sturgill*, 2023 U.S. Dist. LEXIS 91247 at *30 (E.D. Ky. May 25, 2023) (collecting cases holding that prisoners suffering from the normal effects of OC spray exposure did not establish a serious medical need for a deliberate indifference claim); *see also Armour v. Horton*, 2022 U.S. Dist. LEXIS 21495 at *13 (W.D. Mich. Feb. 7, 2022) (same).

### b. Deliberate Indifference: The Subjective Component

The subjective component asks whether the official "kn[e]w of and disregard[ed] the serious medical need." *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). So, the plaintiff must first show that there was a serious medical need—i.e., the objective component—before the Court can consider the subjective component. *Id.* ("Only if a prisoner proves [the] objective element must courts consider the second (subjective) part of the deliberate-indifference test.") As noted above, the evidence, at best, shows that Jenkins suffered from the normal effects of OC spray exposure. And those effects are not a serious medical need. *See, e.g., McDougald v. Eaches*, 2018 U.S. Dist. LEXIS 139902 at *17 (S.D. Ohio Aug. 17, 2018). The Court will thus not analyze the subjective component.

### C. Administrative Exhaustion

Defendants argue that Jenkins has not complied with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), because he has not exhausted his administrative remedies for his

deliberate indifference claim.  (Doc. No. 30 at p. 10.)  Defendants contend that Jenkins's first grievance merely alleged some injury but "never suggest[ed] he was denied medical." (*Id*. at p. 11.) Defendants proffer that Jenkins later filed a second grievance that specifically alleged Dahlby and Booth denied him access to medical care. (*Id*.)  Jenkins did not timely file this second grievance, and so, Defendants argue, he failed to exhaust his administrative remedies. (*Id*.)

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

"Failure to exhaust is an affirmative defense." *Doe v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (citing *Jones*, 549 U.S. at 216).  Defendants bear the burden of proof. *Id*. (citation omitted). A prisoner must make "affirmative efforts to comply with the administrative procedures," and a court should analyze whether those efforts "were sufficient under the circumstances." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citation omitted).  A court should grant summary judgment for failure to exhaust "only if a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Id*. (citation omitted).

Defendants have not shown how Jenkins's initial grievance failed to comply with the prison's grievance requirements. Ohio Administrative Code Rule 5120-9-31 provides the grievance procedure for Ohio prisons.  It requires that prisoner complaints "contain specific information; dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved and the name or names of any witnesses." O.A.C. R. 5120-9-31(J).  The Code does not require that the prisoner's complaint contain a specific legal claim.  Jenkins's first grievance largely contained the required information.  Moreover, Jenkins appealed to, and received a decision from,

the Office of the Chief Inspector. *See Marshall v. Ohio Dep't of Rehab. & Corr.*, 2017 U.S. Dist. LEXIS 54462 at *17 (S.D. Ohio Apr. 10, 2017) (holding an inmate exhausts his remedies under Rule 5120-9-31 when he receives a decision on his appeal from the office of the chief inspector).

The Court therefore concludes that there is a genuine dispute of material fact about whether Jenkins failed to exhaust his administrative remedies. Nonetheless, because the Court has also concluded that there is no genuine dispute of material fact about Jenkins's substantive claims, this does not change the Court's ultimate ruling in favor of Defendants.

### D. Qualified Immunity

Because the Court has concluded that all Defendants are entitled to summary judgment on Jenkins's claims, the Court need not address Defendants' qualified immunity argument. *See Greene v. Crawford Cty.*, 22 F.4th 593, 614 (6th Cir. 2022).

### IV. Conclusion

For all the above reasons, the Court GRANTS Defendants' Motion for Summary Judgment. (Doc. No. 30.)

**IT IS SO ORDERED.**

Date: July 21, 2023

                                                                                         *s/Pamela A. Barker*
                                                                             PAMELA A. BARKER
                                                                             U. S. DISTRICT JUDGE